Opinion by
 

 Hirt, J.,
 

 Appellants were .dismissed from administrative positions, held under tbe Civil Service .section of tbe Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897 as amended, 43 PS 768, for tbe same cause and under almost identical circumstances. One of them entered the service on May 23, ,1938; tbe other two on December 9, 1938. Each bad acceptably served tbe probationary period and, under tbe act, bad become a permanent employee. After continuous satisfactory service until September 25, 1940 they were then dismissed summarily because in April 1938 each bad
 
 *149
 
 signed a Nomination Paper of the Communist Party, naming candidates of that party for offices to be filled in a State-wide election. The Secretary of Labor and Industry in dismissing them found that they were representatives of the Communist Party and for that reason as well as their dishonesty in attempting to conceal the fact, were chargeable with “delinquency or misconduct in his or her duties,” a ground for dismissal under Art. II. §208(o), 43 PS 768. The Board of Review on appeal affirmed the order ,of dismissal, but on broader ground. It refused “to believe that there is any requirement in the law or the Constitution which bars an executive of the State Government from removing any employee, for the good of the service, as to whom he has any tenable evidence that he is either a member of the Communist Party or, even if not legally a member, that he has in any way given aid or comfort to that Party.” We agree with ,the conclusion of the Board.
 

 ■On August 14, 1940 the Secretary sent a questionnaire to appellants seeking information as to their loyalty to our principles of government. They voluntarily answered all of the questions, and in them .disclaimed affiliation with the Communist Party or any Nazi or Fascist group and expressed a willingness to take an oath of allegiance to uphold the Federal and State Constitutions. Their answers to the question: “Have you ever signed nominating petitions for any candidates on the Communist Party ticket?” were substantially the same. None of them .could recall having signed such petition, though at the hearing on appeal each freely admitted that he did. Appellants are intelligent, well-educated persons and the inference is reasonable that the answer of each to the above question was intentionally evasive and that they all signed the nominating paper with full knowledge of its import and the significance of their acts. Because of the radical objectives of the Communist Party an intelligent person, not a
 
 *150
 
 communist, certainly would remember attaching his signature to a nominating paper as a representative of that party; the circumstances under which he was induced, against his convictions, to lend his name to such petition would leave a lasting impression. The recital of the Nominating Paper: “We, the undersigned, all of whom are qualified electors of State of Pennsylvania and of the Philadelphia County,
 
 representing the Communist Party or Policy,
 
 hereby nominate the following persons, viz:” [followed by the names of the candidates] charges them as Communists whether or not registered as voters under that political party. (Italics supplied.) One who represents a policy cannot convincingly deny that he is not an advocate of its doctrine. The evasive answers of appellants in August 1940 are evidence that they were then Communists, seeking to cloak the fact by their registration in another political party. We may therefore take it to be established that within a few months of the time when they entered the service, appellants, in writing, declared that they were a part of the Communist Party and representatives of its policy. From the evidence, the Board of Review undoubtedly were justified in concluding that appellants were of the same mind at the time of their dismissal, as well as when they entered the service of the State.
 

 What the policy of the Communist Party is, does not appear from the evidence. But courts have long recognized and have taken judicial notice that Communism, as a political movement, is dedicated to the overthrow of the government of the United States [and, with it, the governments of the States as necessary incidents in our system of divided sovereignty]
 
 by force and violence. United States v. Wallis,
 
 268 F. 413;
 
 Skeffington v. Katzeff,
 
 277 F. 129;
 
 Antolish v. Paul,
 
 283 F. 957. Membership in that party by an alien is ground for deportation.
 
 Ungar v. Seaman,
 
 4 F. 2d 80;
 
 United States v. Perkins,
 
 79 F. 2d 533. There are cases which take the contrary view.
 
 Strecker v. Kessler,
 
 95 F. 2d
 
 *151
 
 976;
 
 Strecker v. Kessler,
 
 96 F. 2d 1020;
 
 Ex Parte Fierstein,
 
 41 F. 2d 58. The United States Supreme Court has not found it necessary to pass upon the question.
 
 Kessler v. Strecker,
 
 59 S. Ct. 694.
 

 For .ourselves, we are not willing to say that courts are such impotent instruments of government that they may not take judicial notice of facts so well known to the man on the street. Destruction of other existing governments by violence is not the subject, merely, of a secret pact among Communists; it is the vaunted' objective of the party openly declared by its recognized spokesmen. In the meantime, though Communists concede that these ends cannot be attained except by violent revolutionary processes, they have sought to maintain their status as a legitimate political party entitled to a place on the ballot.
 
 [1]
 

 Recent legislation, the Act of July 28, 1941, P. L. 530, provides that even where employment is under civil service, an employee who advocates “un-American or subversive doctrines” may be dismissed from service on that ground. Though the legislature has spoken only since the dismissal of appellants and the Act is not applicable here, we are not prepared to say that the power to dismiss Communists from public service, must rest upon legislative grant. In every employment there are implied covenants and conditions in addition to those specifically appearing in the contract. The ordinary virtues of honesty and loyalty are assumed. One may be dishonest in other than money matters and in general it hardly can be said that an employee who is awaiting the occasion to destroy his employer’s business or burn his warehouses has not violated his implied covenant of reasonable loyalty, though by the contract his employment is for a definite period. On sufficient proof, such employee certainly
 
 *152
 
 may be dismissed on that ground. Similarly, to say that the State must supinely await an overt subversive act before it may discharge a Communist from its employ is to admit that it has none of the attributes of sovereignty.
 

 The purpose of the Civil Service is to supplant the “spoils system” and to remove political affiliation as a reason for dismissal from office. But the mandate of the act that there shall be no discrimination because of “political affiliation” refers to politics in its narrow application to groups with legitimate aims and not to movements, political in a broad sense, which advocate destruction of government by violence. We have given thorough consideration to the other collateral questions raised by appellants but find no merit in them calling for discussion.
 

 The orders are affirmed.
 

 [1]
 

 Since the Act of July 28, 1941, P. L. 530, political parties, with like aims are excluded from the ballot.