Fitzgerald, Appellant, *v*. Philadelphia.

380

Argued January 12, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

re-argument refused March 4, 1954.

*Harry E. Sprogell,* with him *Joseph P. Flanagan, Jr.,* for appellant.

*Jerome J. Shestack,* First Deputy City Solicitor, with him *Richard D. Solo,* Assistant City Solicitor and *Abraham L. Freedman,* City Solicitor, for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, February 10, 1954:

The question is the constitutionality of the Pennsylvania Loyalty Act of December 22, 1951, P. L. 1726, with special reference to the oath prescribed in Section 5 thereof.

Plaintiff was employed as a Staff Nurse in the operating room of the Philadelphia General Hospital from October 1, 1949, to April 18, 1952, on which latter date she was dismissed because she declined to take the oath required by the statute. At the very outset it is only fair to plaintiff to state that, admittedly, she is utterly opposed to Communism and is in all respects loyal to the principles of our government, and, further, that the performance of the duties of her position was at all times entirely satisfactory. She was, however, of the conscientious belief that her rights under the Constitutions of the United States and the Commonwealth of Pennsylvania would be infringed if she were compelled to take the prescribed oath of loyalty. After her dismissal and after appealing in vain to the Civil Service Commission, she filed a complaint in mandamus in the Court of Common Pleas seeking reinstatement, but judgment was there rendered against her. From that judgment she now appeals.

The Act of 1951 provides that no "subversive person, as defined in this act,[1] nor any person as to whom on all the evidence there is reasonable doubt concerning his loyalty to the government of the United States or the Commonwealth of Pennsylvania, shall be eligible for employment in or appointment to any office or any position of trust or profit in the government of or in the administration of the business of this Commonwealth or of any school district, county, municipality or other political subdivision of this Commonwealth." Section 5—which is the portion of the act here under attack—provides that the appointing authority of each person in the employ of the Commonwealth or of any of its political subdivisions, other than those holding elective offices, shall require such person to "make a written statement, under oath or affirmation, which statement shall contain notice that it is subject to the penalties of perjury, and shall be in the following form: "I, —————————, do solemnly swear (or affirm) that I will support, obey and defend the Constitution of the

---

[1] "Subversive person" is defined as meaning "any person who commits, attempts to commit, or aids in the commission, or advocates, abets, advises or teaches, by any means, any person to commit, attempt to commit, or aid in the commission of, any act intended to overthrow, destroy, alter, or to assist in the overthrow, destruction or alteration of the constitutional form of government of the United States or of the Commonwealth of Pennsylvania, or any political subdivision of either of them, by force or violence, or who is knowingly a member of a subversive organization or a foreign subversive organization as defined in this act."

"Subversive organization" is defined as meaning "any organization which engages in or advocates, abets, advises or teaches, or a purpose of which is to engage in or advocate, abet, advise or teach, activities intended to overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government of the United States or of the Commonwealth of Pennsylvania, or of any political subdivision of either of them, by force or violence."

United States and the Constitution of this Commonwealth, and that I will discharge the duties of ——— with fidelity. And I do further swear (or affirm) that I do not advocate, nor am I knowingly a member of any organization that advocates, the overthrow of the government of the United States or of this Commonwealth by force or violence or other unconstitutional means, or seeking by force or violence to deny other persons their rights under the Constitution of the United States or of this Commonwealth. And I do further swear (or affirm) that I will not so advocate nor will I knowingly become a member of such organization during the period that I am an employe of the Commonwealth of Pennsylvania (or political subdivision thereof)." It was directed that any person failing or refusing to execute such statement should be discharged immediately by the proper appointing authority.

Appellant contends that the compulsion to take such oath under penalty of dismissal from employment in case of noncompliance constitutes a violation of the right of free speech and peaceable assembly guaranteed by Amendments I and XIV of the Constitution of the United States, the right of free communication of thoughts and opinions secured by Article I, Section 7, of the Constitution of Pennsylvania, the freedom of control or interference by any human authority with the right of conscience as provided in Article I, Section 3, and the reservation in Article I, Section 26, of all such rights out of the general powers of government. She also complains of an alleged vagueness in the terms of the oath which, she asserts, renders it impossible for one, even with the best of intentions, to know whether he is making an untrue statement and thereby committing perjury.

We do not understand that appellant argues—or indeed could argue—that the Commonwealth or any of

its political subdivisions cannot refuse employment, or discontinue it, in the case of anyone who is knowingly a member of a subversive organization. It would be intolerable for any government to retain in its employ one who advocates its overthrow by force or violence or knowingly consorts with others in an organization having such an objective. What we held in *Albert Appeal*, 372 Pa. 13, 92 A. 2d 663, and what the Supreme Court of the United States held in *Adler v. Board of Education of the City of New York*, 342 U.S. 485, in regard to teachers applies equally to all public employes, namely, that the legislature, as a condition of their employment, may prescribe qualifications with respect not only to their general attainments but also to their moral character and their loyalty to the state and federal governments, and, to that end, may deny them public employment if they are knowingly members of a disloyal and seditious organization. (Cf. *Hutchinson v. Magee*, 278 Pa. 119, 122 A. 234; *Pawell v. Unemployment Compensation Board of Review*, 146 Pa. Superior Ct. 147, 22 A. 2d 43.) That being so, the oath prescribed by the 1951 Act is obviously justified for the purpose of informing the appointing authority as to whether the employe is in fact a member of an organization which he knows is subversive in character and therefore is not a fit person to be entrusted with the duty of supporting and advancing the interests of the very government whose destruction he is seeking to accomplish.

Coming, then, to the specific objections voiced by appellant, we find no justification for her contention that the prescribed oath is unduly vague in its terminology and sets up a dubious standard for guidance. She asks how a person can know whether an organization of which he is a member is one that actually *has* a subversive purpose, or—if it aims to alter the govern-

ment by means other than by force or violence—whether such means *are* unconstitutional, or what *are* the constitutional rights of a person which such organization may not forcibly deny? She points out that in *Joint Anti-Fascist Refugee Committee v. McGrath, Attorney General,* 341 U.S. 123, it was held that the action of the Attorney General was arbitrary in designating certain organizations as Communist in a list furnished to the Loyalty Review Board for use in connection with determination of disloyalty of government employes; she would thus emphasize the difficulty of ascertaining whether any given organization is in fact subversive. But this argument loses weight in view of the fact that the oath here in question proscribes membership in an organization which the employe *knows* is one that advocates the overthrow of the government by force or other unconstitutional means; criminal prosecution for the making of a false oath would not be maintainable unless the false swearing was wilful and corrupt, and therefore the employe cannot suffer the danger of incurring a criminal penalty if innocent of any criminal intent: cf. *Screws v. United States,* 325 U.S. 91, 102, 103; *Garner v. Board of Public Works of Los Angeles,* 341 U.S. 716, 723.

In *Wieman v. Updegraff,* 344 U.S. 183, 190, 191, a statute of Oklahoma which required state employes as a condition of employment to take a loyalty oath somewhat similar to that prescribed by the present Pennsylvania Act was held by the United States Supreme Court to be violative of the due process clause of the 14th Amendment because it excluded persons from state employment solely on the basis of membership in subversive organizations regardless of the employes' knowledge or lack of knowledge concerning the activities and purposes of the organizations to which they belonged. But our own statute is subject to no such infirmity

because it does not interdict innocent membership; it is only the deliberate and purposeful joining, with knowledge of the organization's objectives and activities, that is within the contemplation of the statute;[2] the test is whether the loyalty statement, even if in fact erroneous in its denial of membership in an organization which is in fact subversive, is made in honest ignorance of that fact and therefore in good faith. As to the phrases "other unconstitutional means" and "deny other persons their rights under the Constitution of the United States or of this Commonwealth," it might be said, as in *American Communications Assn., C.I.O., v. Douds,* 339 U.S. 382, 412, that "There is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question. The applicable standard, however, is not one of wholly consistent academic definition of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed."

Appellant contends that the loyalty oath is an infringement of the rights of free speech and peaceable assembly, free communication of thoughts and opinions, and freedom from interference with the rights of conscience. While the maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means is a fundamental principle of our constitutional system (*Stromberg v. California,* 283 U.S. 359, 369), certainly the constitutional rights thus asserted by appellant do not extend to freedom to meet with others, knowingly and deliberately, for the discussion of plans to overthrow the gov-

---

. : [2] Of course "knowledge," as pointed out in *Albert Appeal,* 372 Pa. 13, 23, 92 A. 2d 663, 667, can properly be inferred from objective facts and circumstances.

ernment by force or violence. Appellant argues that, not being able accurately to ascertain whether any given organization is in fact subversive, she would be obliged, in fear of making a mistake in that regard, to refrain from joining associations that in fact might be wholly legitimate, and therefore the right of peaceable assembly was being denied to her. The argument thus propounded seems highly strained, but, even if the possibility it conjures up were real, it would not militate against the constitutionality of the loyalty oath because the constitutional rights which appellant invokes are not so wholly sacrosanct as to be immune from the slightest modification under any and all circumstances. It was said in *United Public Workers of America (C. I. O.) v. Mitchell*, 330 U.S. 75, 95: "Of course, it is accepted constitutional doctrine that these fundamental human rights are not absolute . . . The essential rights of the First Amendment in some instances are subject to the elemental need for order without which the guarantees of civil rights to others would be a mockery." So, in *American Communications Assn., C.I.O., v. Douds*, 339 U.S. 382, 399, it was said: "When particular conduct is regulated in the interest of public order, and the regulation results in an indirect, conditional, partial abridgement of speech, the duty of the courts is to determine which of these two conflicting interests demands the greater protection under the particular circumstances presented. . . On the other hand, legitimate attempts to protect the public . . . from present excesses of direct, active conduct, are not presumptively bad because they interfere with and, in some of its manifestations, restrain the exercise of First Amendment rights." And in *Thorp v. Board of Trustees of Schools for Industrial Education of Newark*, 6 N. J. 498, 508, 509, 79 A. 2d 462, 467, it was said: "But the fundamental civil liberties here involved are not ab-

solute. The particular guarantee of freedom of thought and opinion by the First Amendment is not free of all qualification. Government has the inherent right of self-protection against the forces that would accomplish its overthrow by violence. It is of the very nature of the social compact that the individual freedoms at issue here are subject to reasonable restraint in the service of an interest deemed essential to the life of the community . . . The question is whether the statutory proscriptions bear a reasonable relation to the apprehended public evil. Where a regulation in the interest of public order results in an indirect partial abridgement of civil rights, the inquiry is as to which of the two conflicting interests demands the greater protection in the circumstances. The incidental limitation of personal freedoms is justifiable where necessary in the service of an overriding public interest."

In the *Thorp* case, supra, it was held that a loyalty oath could constitutionally be exacted of school teachers. *In re Summers*, 325 U.S. 561, it was held that an application for admission to the practice of law in a State could properly be refused even if the applicant was unable because of conscientious scruples to take a required loyalty oath, and that this would not constitute a denial of any right under the First and Fourteenth Amendments of the Federal Constitution. In the *Douds* case, supra, where the Labor Management Relations Act of 1947 denied certain privileges to labor organizations the officers of which failed to file affidavits that they were not members of the Communist Party or any other subversive organization, such provision was held not unduly to infringe freedoms protected by the First Amendment. In *Gerende v. Board of Supervisors of Elections of Baltimore*, 341 U.S. 56, an act was upheld which required a candidate for election to public office to make oath that he was not en-

gaged in any way in an attempt to overthrow the government by force or violence and was not knowingly a member of an oganization engaged in such an attempt. And finally, in *Garner v. Board of Public Works of Los Angeles,* 341 U.S. 716, it was held that the Federal Constitution did not forbid a municipality to require its employes to execute affidavits disclosing whether or not they were or never had been members of the Communist Party; the only limitation imposed by the court was that the oath should not be construed as adversely affecting persons who, during their affiliation with a proscribed organization, were innocent of its purpose. The court said (p. 720) : "We think that a municipal employer is not disabled . . . from inquiring of its employees as to matters that may prove relevant to their fitness and suitability for the public service." Such "matters" were held to include the loyalty of the employe.

Appellant's final contention is that the oath required by the Pennsylvania statute is too broad in its coverage because, while it might be proper to exact a loyalty test in sensitive areas such as teaching in the public schools, there is no proper basis for the extension of the requirement to an employe such as this appellant who was merely a nurse in a hospital owned and operated by the municipality. It is of course true that the searching out of disloyal employes may be more necessary in the case of teachers than of other public servants, but it cannot be said that the Legislature acted arbitrarily in not drawing a more restricted and discriminating classification. No employe of a governmental agency, whether teacher, nurse, or anyone else, should be allowed, while in such employ, to disseminate disloyal and seditious doctrines or encourage their spread by membership in a subversive organization.

The judgment is affirmed.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.