125 So.2d 554 (1960)
David Walton CRAMP, Jr., Appellant,
v.
BOARD OF PUBLIC INSTRUCTION OF ORANGE COUNTY, Florida, Appellee.
No. 30598.
Supreme Court of Florida.
November 16, 1960.
Rehearing Denied January 17, 1961.
*555 Tobias Simon and Howard Dixon, Miami, for appellant.
J.R. Wells and Allen K. McCormick of Maguire, Voorhis & Wells, Orlando, Richard *556 W. Ervin, Atty. Gen., Ralph E. Odum and William J. Roberts, Asst. Attys. Gen., for appellee.
THORNAL, Justice.
Appellant Cramp who was plaintiff below seeks reversal of a final decree sustaining the validity of Sections 876.05-876.06, Florida Statutes, F.S.A.
We must decide whether the cited statute, which prescribes a so-called "loyalty oath" as a condition to public employment, offends various provisions of the State and Federal Constitutions.
Plaintiff Cramp had served approximately nine years in the public school system of Orange County. It was then discovered that through an oversight, he had never been required to execute the oath required by Section 876.05, Florida Statutes, F.S.A. The appellee Board immediately demanded that the oath be executed. The school teacher-appellant refused. He based his refusal on the contention that the statutory requirement of the execution of the oath as a condition to continuing his employment as a public school teacher violated certain constitutional rights. Fearing dismissal he filed his complaint for a declaratory decree. He sought a temporary injunction against dismissal pending the litigation, and an ultimate decree adjudicating the invalidity of the statute. The chancellor denied the temporary restraining order. Cramp v. Board of Public Instruction, Fla., 118 So.2d 541. On final hearing the chancellor upheld the statute against appellant's assault. The prayer for a permanent injunction was denied. By direct appeal, Article V, Section 4(2), Florida Constitution, F.S.A., we are requested to reverse the final decree.
Appellant Cramp contends here, as he did in the trial court, that the subject statute is fatally vulnerable on various constitutional grounds. In sum, it is his position that the Florida loyalty oath statute is defective because it fails to specify knowledge or scienter as an element of the proscribed conduct. Appellant also contends that the statute destroys the traditional presumption of innocence and shifts the burden of proof by legislative enactment without due process; it is claimed that the statute is a bill of attainder and an ex post facto law and that it is so vague that it is unintelligible. Cramp claims that the Federal government has pre-empted the field of sedition control. Finally, he says that the Florida constitutional oath prescribed by Article XVI, Section 2, is exclusive and, therefore, does not permit any additional legislative prescription.
The appellee School Board by its brief undertakes to defend the statute against each of the attacks leveled by the appellant.
By Section 876.05, Florida Statutes, F.S.A., all persons employed by the State or any county or city, or school board, are required to subscribe to the following oath:
"I, ____ a citizen of the State of Florida and of the United States of America, and being employed by or an officer of ____ and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida; that I am not a member of the Communist Party; that I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party; that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence; that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or of Florida by force or violence."
It is required that the oath be filed with the employing governmental agency prior to the approval of any salary voucher. Section 876.06, Florida Statutes, F.S.A., provides for the discharge of any person who refuses to subscribe to the quoted oath.
*557 Sections 876.05-876.06, supra, were Sections 1 and 2, Chapter 25046, Laws of Florida 1949. We have concluded that the chancellor ruled correctly in upholding the statute against the appellant's attack.
With as much brevity as the importance of the question permits we shall proceed to dispose of each of appellant's contentions.
It is asserted that the prescribed oath does not include an element that the maker thereof had knowledge of the subversive nature of the affiliations at the time he engaged in them. In other words, appellant contends that a man should not be held liable for a false oath if he swears to nonsubversive associations when in effect, he is or has been innocently and unknowingly aligned with a subversive organization. We think this matter has been placed at rest by us as well as by the Supreme Court of the United States. In State v. Diez, Fla., 97 So.2d 105, we held that the element of scienter was implicit in each of the requirements of the statute. Conceding the essentiality of this element, we there upheld the statute with our interpretation to the effect that implied in each requirement was the presence of scienter or knowledge. Although appellant avers that this constitutes "a judicial amendment of the statute" we find ourselves supported in such an interpretation by respectable authority. Lerner v. Casey, 357 U.S. 468, 78 S.Ct. 1311, 2 L.Ed.2d 1423; Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472; Garner v. Board of Public Works, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317; Gerende v. Board of Supervisors, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745.
We are not disturbed by appellant's reliance on Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216. While this decision involved a similar loyalty oath, the highest court of the State of Oklahoma had held that the element of scienter was not essential to validity and also that it was absent from the requirements of the act. The Supreme Court of the United States merely accepted the Oklahoma court's interpretation of its State statute as to the implication of scienter. The United States Court reversed when it held that scienter was essential. On the other hand, the implication of scienter was sustained in those decisions which we have cited to support our view.
We think the time is now passed when statutes of this type are subject to question because of alleged pre-emption of the field of subversive control by the Federal Government. Appellant presses his claim in this regard with continued reliance on Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640. In sustaining this same statute against the same attack in State v. Diez, supra, we indicated our view that Nelson did not preclude paralleling state action on the same problem. We specifically so held in Gibson v. Florida Legislative Investigation Committee, Fla. 1959, 108 So.2d 729, certiorari denied 360 U.S. 919, 79 S.Ct. 1433, 3 L.Ed.2d 1535. The Supreme Court of the United States similarly announced its own position on the same subject in Uphaus v. Wyman, 360 U.S. 72, 79 S.Ct. 1040, 3 L.Ed.2d 1090. Moreover, we could actually lay aside this contention on the further ground that the instant statute legitimately prescribes an element of required qualifications precedent to public employment. The statute under discussion is merely a legislative enactment asserted within the orbit of the state's police power. It simply stipulates certain conditions under which individuals can work for the State. The subversive control aspect is involved only tangentially. The primary objective of the statute is to exclude from public employment persons lacking in the stipulated qualifications or in converse, persons burdened with stipulated disqualifying qualities. Beilan v. Board of Public Education, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414; Adler v. Board of Education 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472; Lerner v. Casey, 357 U.S. 468, 78 S.Ct. 1311, 2 L.Ed.2d 1423; Thorp v. Board of Trustees, 6 N.J. 498, 79 A.2d 462; Nostrand v. Balmer, *558 53 Wash.2d 460, 335 P.2d 10, but see Nostrand v. Little, 362 U.S. 474, 80 S.Ct. 840, 4 L.Ed.2d 890; Laba v. Newark Board of Education 23 N.J. 364, 129 A.2d 273; Appeal of Albert, 372 Pa. 13, 92 A.2d 663; Fitzgerald v. City of Philadelphia, 376 Pa. 379, 102 A.2d 887; Kaplan v. School District of Philadelphia, 388 Pa. 213, 130 A.2d 672; State ex rel. Schweitzer v. Turner, 155 Fla. 270, 19 So.2d 832.
Appellant contends further that the oath prescribed by Section 876.05, supra, is unconstitutional for the reason that it imposes requirements additional to those stated in the constitutional oath prescribed by Article XVI, Section 2, Florida Constitution. To this end we are requested to follow the decision of the Supreme Court of New Jersey in Imbrie v. Marsh, 3 N.J. 578, 71 A.2d 352, 18 A.L.R.2d 241. Were we inclined to concur in the decision of the New Jersey Supreme Court on this point and we interpolate that we are not, we are here led by the facts of the instant case to distinguish the situation before us from that presented in the New Jersey matter. It was there held that a loyalty oath in addition to the stipulated constitutional oath similar to ours, could not be imposed upon candidates for the office of governor or members of the Legislature. We do not have a state officer involved here. The Florida Constitution requires that the oath be taken by "each and every officer of this State, * *" The appellant Cramp is a school teacher and therefore, an employee as distinguished from an officer in the constitutional sense. State ex rel. Holloway v. Sheats, 78 Fla. 583, 83 So. 508; IX U.Fla.L.R. 47, (Spring 1956). The constitutional oath prescribed by Article XVI, Section 2, supra, must be taken by all state officers but is not a stipulated requirement of an employee. New Jersey itself has made the distinction. Thorp v. Board of Trustees, 6 N.J. 498, 79 A.2d 462. Hence, appellant is not in a class adversely affected by the statutory requirement on this point, and is therefore not in a position to gain support from this argument.
In practically all the cases decided by the Supreme Court of the United States on the subject of loyalty oaths as a condition to public employment attacks have been directed on the ground of alleged vagueness, on the contention that freedom of speech and assembly are impinged and that the presumption of innocence is destroyed. In each instance dealing with similar statutes and similar situations the United States Supreme Court has consistently upheld the statutes against such assaults. Certainly the instant statute is perfectly clear in its requirements. There could be no doubt in the minds of anyone who can read English as to the requirements of the statute and the effect of a failure to comply. Adler v. Board of Education, supra.
It has long been recognized that the First Amendment freedoms are not absolutes in and of themselves. When they are asserted as a barrier to government action we are confronted by the necessity of balancing the asserted private right against the alleged public interest. The private right will certainly not be lightly regarded. However, an indirect adverse effect on the asserted right of the individual will not preclude the exercise of governmental power when the power is shown to exist and its assertion is necessitated by the exigencies of the public wellbeing. Barenblatt v. United States, 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115.
As we have pointed out in other parts of this opinion, the failure to take the required oath does not work an adjudication of guilt nor does it burden the employee with the responsibility of proving innocence against an assertion of guilt. Statutes of this type have been consistently sustained on the theory that they constitute merely a stipulation of qualifications or disqualifications for public employment. The statute contains no prohibition against the right of a citizen to speak out or to assemble peaceably. It merely provides that when one speaks out to advocate the violent overthrow of the government of the United States, or assembles for that purpose, he *559 cannot simultaneously work for and draw compensation from the government he seeks to overthrow.
Finally we proceed to what is probably the most difficult aspect of the instant statute. So far as we have been able to ascertain, Florida is the only state which requires the employee to swear "* * * that I have not lend [lent] my aid, support, advice, counsel or influence to the Communist Party; * * * " Others might have similar provisions but we have been referred to none. This particular provision was upheld in State v. Diez, supra. In that opinion also, we construed the word "lend" as meaning "lent" when applied to the oath regarding past conduct. We are again fronted by the contention that the Florida Statute constitutes a bill of attainder prohibited to the states by Article I, Section 10, Constitution of the United States. This is so, asserts the appellant, because when the employee is required by law to take an oath that he has not at any time in the past aided or supported the Communist Party, or else suffer the pain of dismissal, the Legislature is adjudicating his guilt without benefit of trial and an opportunity to defend. Appellant refers to the recognized definition of a bill of attainder as a legislative enactment which adjudicates guilt without benefit of judicial trial. He points further to the prohibition against ex post facto laws which precludes giving retroactive effect to past conduct in order to support present punishment. Article I, Section 10, supra. For reasons we hereafter mention, the Supreme Court of the United States has upheld similar statutes against similar assaults. We must confess recognition of the necessity to subordinate our own conclusions to those of the higher authority on the subject. However, we find it in most instances a little difficult to reconcile the recent decisions of the United States Court with its earlier precedents in Cummings v. State of Missouri, 4 Wall. 277, 18 L.Ed. 356 and Ex parte Garland, 4 Wall. 333, 18 L.Ed. 366. Moreover, the opinion of this Court in McNealy v. Gregory, 13 Fla. 417, clearly committed Florida to the ruling of the Cummings decision.
In recent years, however, the Supreme Court of the United States has, with almost invariable consistency, construed Cummings and Garland as involving a situation in which there was no reasonable relationship between the past conduct proscribed and the then current business or profession from which it was sought to exclude an individual solely account of his past conduct. In other words, the United States Court has merely held that there was no reasonable relationship between the profession of the Catholic Priest in Cummings, or that of the lawyer in Garland and the proscribed past conduct of having had affiliations with the then defeated Confederacy. This Court has likewise so construed Cummings and Garland. Page v. Watson, 140 Fla. 536, 192 So. 205, 126 A.L.R. 249; State v. Diez, supra. As stated above, this position is supported by numerous recent decisions of the Supreme Court of the United States. Hawker v. People of State of New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002; Garner v. Board of Public Works, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317; Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517; Beilan v. Board of Public Education, 357 U.S. 399, 78 S.Ct. 1317, 2 L.Ed.2d 1414.
In view of these interpretations of Cummings and Garland we find no difficulty in concluding that there is a reasonable relationship between the vital profession of teacher in the public school system and past associations with subversive organizations. Beilan v. Board of Public Education, supra; Adler v. Board of Education, supra. In this connection, however, we deem it appropriate to indicate a concern over the exercise of this power to proscribe long past conduct. The imposition of sanctions as retribution for past acts has potentials for impinging upon many of our traditional concepts of due process, property rights, and fair play in the multitudinous relationships between the individual and his government. However, for reasons hereafter *560 stated, we find it unnecessary to decide whether denial of public employment could be construed as "punishment" within the prohibition against ex post facto laws. Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460. Solution to that problem will have to await the appropriate case. McNealy v. Gregory, supra.
By the allegations of his complaint, the appellant under oath affirmatively denied any present or past associations which would preclude him from executing the subject oath. He stated in his complaint "* * * that he has not, does not, and will not lend (sic) aid, support or advice (sic) counsel or influence to the Communist Party; * * *" Further, the appellant disavows any belief in the violent overthrow of either the State or Federal government. He denies membership in any organization which believes in or teaches such conduct. The complaint alleges that appellant "is a loyal American" and he states that he does not decline to execute the required oath because of fear of penalties for the making of a false oath.
Appellant comes into court seeking a declaratory decree to determine his rights under the subject statute. He claims that the mere requirement of the oath impinges on his constitutional freedoms and therefore entitles him to the declaratory decree. However, in order to obtain an adjudication of the invalidity of a statute the appellant must carry the burden of demonstrating that the enforcement of the law would adversely affect him. It being clear from the allegations of his own complaint that he has never been affiliated with any proscribed association, we are not persuaded that the requirement that he so state under oath could adversely affect him. In other words, there could not possibly be a legislative adjudication of guilt for the simple reason that the complaint on which appellant stands affirmatively points out that appellant has never been connected with any organization that could result in guilt. Furthermore, as to this appellant the statute could not constitute an ex post facto law for the obvious reason that appellant asserts that he has never in the past been connected with any association which could lead to current punishment. In short, because of the allegations of his own complaint the appellant teacher has unequivocally demonstrated that he has no standing to assault the subject statute on the grounds that it is a bill of attainder, or an ex post facto law.
We have thoroughly considered every aspect of the appellant's contentions. We have studied all of the authorities submitted by the parties and many others produced by our own research. We fail to find any error in the decree under attack and it is therefore affirmed.
It is so ordered.
THOMAS, C.J., TERRELL, HOBSON, DREW and O'CONNELL, JJ., and MASON, Circuit Judge, concur.