## CRAMP *v.* BOARD OF PUBLIC INSTRUCTION OF ORANGE COUNTY.

No. 72.   Argued October 16, 1961.—Decided December 11, 1961.

*Tobias Simon* argued the cause and filed briefs for appellant.

*J. R. Wells* argued the cause and filed briefs for appellee.

*Richard W. Ervin,* Attorney General of Florida, *Ralph E. Odum,* Assistant Attorney General, and *William J. Roberts,* Special Assistant Attorney General, filed a brief for the State of Florida, as *amicus curiae,* urging affirmance.

Mr. Justice Stewart delivered the opinion of the Court.

A Florida statute requires each employee of the State or its subdivisions to execute a written oath in which he must swear that, among other things, he has never lent his "aid, support, advice, counsel or influence to the Communist Party."[1] Failure to subscribe to this oath

---

[1] The statute in its entirety provides as follows:

"All persons who now or hereafter are employed by or who now or hereafter are on the payroll of the state, or any of its departments and agencies, subdivisions, counties, cities, school boards and districts of the free public school system of the state or counties, or institutions of higher learning and all candidates for public office, are hereby required to take an oath before any person duly authorized to take acknowledgments of instruments for public record in the state in the following form:

"I, ...................., a citizen of the State of Florida and of the United States of America, and being employed by or an officer of ...................... and a recipient of public funds as such employee or officer, do hereby solemnly swear or affirm that I will support the Constitution of the United States and of the State of Florida; that I am not a member of the Communist Party; *that I have not and will not lend my aid, support, advice, counsel or influence to the Communist Party;* that I do not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence; that I am not a member of any organization or party which believes in or teaches, directly or indirectly, the overthrow of the Government of the United States or of Florida by force or violence.

"And said oath shall be filed with the records of the governing official or employing governmental agency prior to the approval of any voucher for the payment of salary, expenses, or other compensation." Fla. Stat. § 876.05. (Italics added.)

The Supreme Court of Florida has construed the portion of the statutory oath printed in italics as follows: "We think the pertinent clause, despite its ungrammatical construction was meant to apply retrospectively and that it should be read as if it had been written 'I have not lent and will not lend' . . . ." *State* v. *Diez,* 97 So. 2d 105, 109.

results under the law in the employee's immediate discharge.[2]

After the appellant had been employed for more than nine years as a public school teacher in Orange County, Florida, it was discovered in 1959 that he had never been required to execute this statutory oath.[3]   When requested to do so he refused.   He then brought an action in the state circuit court asking for a judgment declaring the oath requirement unconstitutional, and for an injunction forbidding the appellee, the Orange County Board of Public Instruction, from requiring him to execute the oath and from discharging him for his failure to do so.   The circuit court held the statute valid and denied the prayer for an injunction.   The Supreme Court of Florida affirmed, 125 So. 2d 554, and this is an appeal from the judgment of affirmance.   Having doubt as to the jurisdiction of this Court, we postponed decision of that preliminary question until the hearing of the appeal on the merits.   366 U. S. 934.

## I.

In his complaint in the state circuit court Cramp alleged that "he has, does and will support the Constitution of the United States and of the State of Florida; he

---

[2] "If any person required by §§ 876.05–876.10 to take the oath herein provided for fails to execute the same, the governing authority under which such person is employed shall cause said person to be immediately discharged, and his name removed from the payroll, and such person shall not be permitted to receive any payment as an employee or as an officer where he or she was serving." Fla. Stat. § 876.06.   See also Fla. Stat. § 876.08, which provides that: "[a]ny governing authority or person, under whom any employee is serving or by whom employed who shall knowingly or carelessly permit any such employee to continue in employment after failing to comply with the provisions of §§ 876.05–876.10" shall be subject to fine, imprisonment, or both.

[3] The statute requiring execution of the oath was enacted in 1949. Laws of Florida, 1949, c. 25046.

is not a member of the Communist Party; that he has not, does not and will not lend aid, support, advice, counsel or influence to the Communist Party; he does not believe in the overthrow of the Government of the United States or of the State of Florida by force or violence; he is not a member of any organization or party which believes in or teaches directly or indirectly the overthrow of the Government of the United States or of Florida by force or violence." He further alleged that he "is a loyal American and does not decline to execute or subscribe to the aforesaid oath for fear of the penalties provided by law for a false oath."

It is these sworn statements in the complaint which raise two related but separate questions as to our jurisdiction of this appeal. First, did the Florida Supreme Court rest its decision, at least alternatively, upon the ground that the appellant, because of these statements, lacked standing to attack the statutory oath? If so, we should have to consider the applicability of "the settled rule that where the judgment of a state court rests upon two grounds, one of which is federal and the other non-federal in character, our jurisdiction fails if the non-federal ground is independent of the federal ground and adequate to support the judgment." *Fox Film Corp.* v. *Muller,* 296 U. S. 207, 210. Secondly, do these sworn statements of the appellant deprive him of standing to attack the state statute in this Court, irrespective of what the Florida court may have decided?

The Supreme Court of Florida ruled that "because of the allegations of his own complaint the appellant teacher has unequivocally demonstrated that he has no standing to assault the subject statute on the grounds that it is a bill of attainder, or an ex post facto law." 125 So. 2d, at 560. We may assume that this ruling by the state court would operate to foreclose our consideration of this appeal if the appellant had confined his attack upon the

statute to the two grounds mentioned. But, in addition to asserting that the Florida statute constitutes an *ex post facto* law and a bill of attainder, the appellant has from the beginning also claimed that the statute is constitutionally invalid for two further and quite different reasons—that it impinges upon his constitutionally protected right of free speech and association, and that the language of the required oath is so vague and uncertain as to deny him due process of law. As we read the opinion of the Florida Supreme Court, both of these federal constitutional issues were decided upon their merits, without even implicit reliance upon any doctrine of state law.[4]

Whether the appellant has standing to attack the state statute in this Court is, however, a separate issue, to which we must bring our independent judgment. *Tileston* v. *Ullman,* 318 U. S. 44; *Doremus* v. *Board of Education,* 342 U. S. 429. The controlling question is

---

[4] The Florida Supreme Court disposed of the claimed violation of the right of free speech and association in the following language:

"It has long been recognized that the First Amendment freedoms are not absolutes in and of themselves. When they are asserted as a barrier to government action we are confronted by the necessity of balancing the asserted private right against the alleged public interest. The private right will certainly not be lightly regarded. However, an indirect adverse effect on the asserted right of the individual will not preclude the exercise of governmental power when the power is shown to exist and its assertion is necessitated by the exigencies of the public wellbeing. Barenblatt v. United States, 360 U. S. 109. . . .

"As we have pointed out in other parts of this opinion, the failure to take the required oath does not work an adjudication of guilt nor does it burden the employee with the responsibility of proving innocence against an assertion of guilt. Statutes of this type have been consistently sustained on the theory that they constitute merely a stipulation of qualifications or disqualifications for public employment. The statute contains no prohibition against the right of a citizen to speak out or to assemble peaceably. It merely provides that when one speaks out to advocate the violent overthrow of the government of the United States, or assembles for that purpose, he cannot simul-

whether the appellant "has sustained or is immediately in danger of sustaining some direct injury as the result of [the statute's] enforcement . . . ." *Massachusetts* v. *Mellon*, 262 U. S. 447, 488.

In the absence of the specific allegations in the complaint to which allusion has been made, there can be no doubt that enforcement of the state law would inflict a direct and serious injury upon the appellant. The statute unequivocally requires the appellant to execute the oath or suffer immediate discharge from public employment. See *United Public Workers* v. *Mitchell*, 330 U. S. 75, 91–92; *Adler* v. *Board of Education*, 342 U. S. 485. The argument is made, however, that the self-exonerating sworn statements in the complaint conclusively show that this appellant could not possibly sustain injury by executing the oath, and that he consequently has undercut his standing to question the constitutional validity of the state law.

Whatever the merits of this argument, it has, we think, no application to the appellant's claim that the statutory oath is unconstitutionally vague. The vices inherent in an unconstitutionally vague statute—the risk of unfair prosecution and the potential deterrence of constitutionally protected conduct—have been repeatedly pointed out in our decisions. See *Connally* v. *General Construction Co.*, 269 U. S. 385, 391; *Cline* v. *Frink Dairy Co.*, 274 U. S. 445, 465; *Stromberg* v. *California*, 283 U. S. 359, 369; *Herndon* v. *Lowry*, 301 U. S. 242, 258–259; *Lanzetta* v.

---

taneously work for and draw compensation from the government he seeks to overthrow." 125 So. 2d, at 558–559.

The court disposed of the claim that the oath requirement was unconstitutionally vague as follows:

"Certainly the instant statute is perfectly clear in its requirements. There could be no doubt in the minds of anyone who can read English as to the requirements of the statute and the effect of a failure to comply. Adler v. Board of Education, supra." 125 So. 2d, at 558.

*New Jersey,* 306 U. S. 451; *Winters* v. *New York,* 333 U. S. 507. See also *Smith* v. *California,* 361 U. S. 147, 151. These are dangers to which all who are compelled to execute an unconstitutionally vague and indefinite oath may be exposed. Cf. *Thornhill* v. *Alabama,* 310 U. S. 88, 96–98.

There is nothing in the allegations of the complaint to indicate that the appellant will not be subjected to these hazards to the same degree as other public employees required to take the oath. The most that can be said of his having subscribed to the allegations in question is that he believes he could truthfully execute the oath, as he understands its language. But the very vice of which he complains is that the language of the oath is so vague and indefinite that others could with reason interpret it differently. He argues, in other words, that he could unconstitutionally be subjected to all the risks of a criminal prosecution *despite* the sworn allegations as to his past conduct which are contained in the complaint.[5] We cannot say that the appellant lacks standing to attack this statutory oath as unconstitutionally vague simply because he now personally believes he could eventually prevail in the event he were prosecuted for perjury. Cf. *Staub* v. *City of Baxley,* 355 U. S. 313, 319; *Jones* v. *Opelika,* 316 U. S. 584, 602, dissenting opinion, adopted *per curiam* on rehearing, 319 U. S. 103, 104; *Smith* v. *Cahoon,* 283 U. S. 553, 562.

We conclude that the appellant is not without standing to attack the Florida statute upon the ground that it is

_____

[5] "If any person required by the provisions of §§ 876.05–876.10 to execute the oath herein required executes such oath, and it is subsequently proven that at the time of the execution of said oath said individual was guilty of making a false statement in said oath, he shall be guilty of perjury, and shall be prosecuted and punished for the crime of perjury in the event of conviction." Fla. Stat. § 876.10.

so vague as to deprive him of liberty or property without due process of law, and we turn, therefore, to the merits of that claim.

## II.

The Florida Supreme Court first considered the provisions of this legislative oath in *State* v. *Diez,* 97 So. 2d 105, a case involving the validity of an indictment for perjury. There the court upheld the constitutionality of the legislation only upon finding it ". . . inherent in the law that when one takes the oath that he has not lent aid, advice, counsel and the like to the Communist Party, he is representing under oath that he has not done so knowingly." 97 So. 2d, at 110. In the present case the Florida court adhered to this construction of the statute, characterizing what had been said in *Diez* as a ruling that "the element of scienter was implicit in each of the requirements of the statute." 125 So. 2d, at 557. We accept without question this view of the statute's meaning, as of course we must. This authoritative interpretation by the Florida Supreme Court "puts these words in the statute as definitely as if it had been so amended by the legislature." *Winters* v. *New York,* 333 U. S. 507, 514. See *Kingsley Pictures Corp.* v. *Regents,* 360 U. S. 684, at 688; *Albertson* v. *Millard,* 345 U. S. 242; *United States* v. *Burnison,* 339 U. S. 87; *Aero Transit Co.* v. *Commissioners,* 332 U. S. 495.

The issue to be decided, then, is whether a State can constitutionally compel those in its service to swear that they have never "knowingly lent their aid, support, advice, counsel, or influence to the Communist Party." More precisely, can Florida consistently with the Due Process Clause of the Fourteenth Amendment force an employee either to take such an oath, at the risk of subsequent prosecution for perjury, or face immediate dismissal from public service?

The provision of the oath here in question, it is to be noted, says nothing of advocacy of violent overthrow of state or federal government. It says nothing of membership or affiliation with the Communist Party, past or present. The provision is completely lacking in these or any other terms susceptible of objective measurement. Those who take this oath must swear, rather, that they have not in the unending past ever knowingly lent their "aid," or "support," or "advice," or "counsel" or "influence" to the Communist Party. What do these phrases mean? In the not too distant past Communist Party candidates appeared regularly and legally on the ballot in many state and local elections. Elsewhere the Communist Party has on occasion endorsed or supported candidates nominated by others. Could one who had ever cast his vote for such a candidate safely subscribe to this legislative oath? Could a lawyer who had ever represented the Communist Party or its members swear with either confidence or honesty that he had never knowingly lent his "counsel" to the Party? Could a journalist who had ever defended the constitutional rights of the Communist Party conscientiously take an oath that he had never lent the Party his "support"? Indeed, could anyone honestly subscribe to this oath who had ever supported any cause with contemporaneous knowledge that the Communist Party also supported it?

The very absurdity of these possibilities brings into focus the extraordinary ambiguity of the statutory language. With such vagaries in mind, it is not unrealistic to suggest that the compulsion of this oath provision might weigh most heavily upon those whose conscientious scruples were the most sensitive. While it is perhaps fanciful to suppose that a perjury prosecution would ever be instituted for past conduct of the kind suggested, it requires no strain of the imagination to envision the possibility of prosecution for other types of equally guiltless knowing behaviour. It would be blinking reality not to

acknowledge that there are some among us always ready to affix a Communist label upon those whose ideas they violently oppose. And experience teaches that prosecutors too are human.

We think this case demonstrably falls within the compass of those decisions of the Court which hold that ". . . a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally* v. *General Construction Co.,* 269 U. S. 385, 391. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453. "Words which are vague and fluid . . . may be as much of a trap for the innocent as the ancient laws of Caligula." *United States* v. *Cardiff,* 344 U. S. 174, 176. "In the light of our decisions, it appears upon a mere inspection that these general words and phrases are so vague and indefinite that any penalty prescribed for their violation constitutes a denial of due process of law. It is not the penalty itself that is invalid but the exaction of obedience to a rule or standard that is so vague and indefinite as to be really no rule or standard at all." *Champlin Refining Co.* v. *Corporation Commission of Oklahoma,* 286 U. S. 210, 243.

The vice of unconstitutional vagueness is further aggravated where, as here, the statute in question operates to inhibit the exercise of individual freedoms affirmatively protected by the Constitution. As we said in *Smith* v. *California,* ". . . stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser." 361 U. S. 147, at 151. "The maintenance of the opportunity for free

political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system. A statute which upon its face, and as authoritatively construed, is so vague and indefinite as to permit the punishment of the fair use of this opportunity is repugnant to the guaranty of liberty contained in the Fourteenth Amendment." *Stromberg* v. *California*, 283 U. S. 359, 369. See also *Herndon* v. *Lowry*, 301 U. S. 242; *Thornhill* v. *Alabama*, 310 U. S. 88; *Winters* v. *New York*, 333 U. S. 507.

As in *Wieman* v. *Updegraff*, we are not concerned here with the question "whether an abstract right to public employment exists." 344 U. S. 183, at 192. Nor do we question the power of a State to safeguard the public service from disloyalty. Cf. *Slochower* v. *Board of Education*, 350 U. S. 551; *Adler* v. *Board of Education*, 342 U. S. 485. It is enough for the present case to reaffirm "that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory." *Wieman* v. *Updegraff*, *supra*, at 192. "The fact . . . that a person is not compelled to hold public office cannot possibly be an excuse for barring him from office by state-imposed criteria forbidden by the Constitution." *Torcaso* v. *Watkins*, 367 U. S. 488, at 495–496.

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join the Court's judgment and opinion, but also adhere to the view expressed in their dissents in *Adler* v. *Board of Education*, 342 U. S. 485, 496, 508; *Garner* v. *Los Angeles Board*, 341 U. S. 716, 730, 731; *Barenblatt* v. *United States*, 360 U. S. 109, 134; and to their concurrences in *Wieman* v. *Updegraff*, 344 U. S. 183, 192.