**UNITED STATES of America, United States Postal Service, Appellants,**

v.

**CITY OF ST. LOUIS, BRANCH 343, NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL–CIO, Charles J. Coyle, President, Branch 343, National Association of Letter Carriers, AFL–CIO, John H. Haake, Vice President, Branch 343, National Association of Letter Carriers, AFL–CIO, Anthony Kosciulek, Steward, Branch 343, National Association of Letter Carriers, AFL–CIO, at North County Branch Post Office, St. Louis, Missouri, John Jack Ruyle, Recording Secretary, Branch 343, National Association of Letter Carriers, AFL–CIO, and duly appointed Steward, Branch 343, North County Branch Post Office, St. Louis, Missouri, Robert M. Appel, Ralph L. Beck, John Constantin, Robert C. Ericson, Ronald R. Hall, Harry G. Krebs, Roy H. Kreienkamp, George B. Martin, James S. Powell, Richard J. Schaefer, Victor W. Wichmann, as agents of Branch 343, National Association of Letter Carriers, AFL–CIO, Appellees.**

No. 78–1478.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1979.

Decided April 20, 1979.

---

Thomas G. Wilson, Atty., App. Sec., Civ. Div., Dept. of Justice, Washington, D. C. (argued), Leonard Schaitman, Atty., Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., and Robert Kingsland, U. S. Atty., St. Louis, Mo., on brief, for appellants.

John H. Goffstein of Bartley, Goffstein, Bollato & Lange, Clayton, Mo., and Peter J. Carre, Washington, D. C. (argued), and Mozart G. Ratner, Washington, D. C., on brief, for appellees.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON,* Chief Judge.

HEANEY, Circuit Judge.

The United States and the United States Postal Service (U.S.P.S.) brought this action against the City of St. Louis and Branch 343 of the National Association of Letter Carriers seeking a declaratory judgment that a St. Louis ordinance, which allegedly prohibited letter carriers from traversing the private property of postal service patrons, was invalid under the supremacy clause on the grounds that it conflicted with a national regulation governing the operations of the U.S.P.S.[1] The District Court granted the appellees' motion for summary judgment, and the United States and the U.S.P.S. appeal. We affirm in part and reverse in part.

On March 22, 1977, Section 795.010 of the Municipal Code of the City of St. Louis was amended by the passage of Municipal Ordinance No. 57335 by the St. Louis Board of Aldermen. This section of the Municipal Code, as amended, provides:

> No person, without lawful authority, or without the express or implied consent of the owner or his agent, shall enter * * on any inclosed or improved real estate, * * * in the City; or, being upon the

---

* PAUL BENSON, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

1. The appellants also alleged that Branch 343 of the National Association of Letter Carriers violated their collective bargaining agreement with the U.S.P.S. The District Court found that this matter was the subject of pending arbitration proceedings and dismissed the claim without prejudice. The United States and the U.S.P.S. do not appeal from this ruling.

land of another shall fail, or refuse to leave same when requested so to do by the person lawfully in possession thereof, his agent or his representative * * *. *Provided further, all delivery personnel, including letter carriers, whether employed by a private firm or a government agency or government supported corporation, shall use sidewalks and accepted and approved walkways and shall refrain from traversing lawns or other private property not normally used as a walkway by the general public in order to effect delivery.* [Amended portion italicized.]

On May 24, 1974, Edward Marlotte, a uniformed U.S.P.S. letter carrier, was charged with violation of this section of the Municipal Code. Marlotte was arrested by city police after a St. Louis resident complained that a letter carrier was traversing her lawn daily, and that she desired to prosecute the carrier for trespass. Marlotte was released after receiving a summons requiring his presence in St. Louis Municipal Court.

After Marlotte's arrest, attorneys from the U.S.P.S. and the Justice Department contacted city officials, protesting that the ordinance was interfering with Postal Service operations, and requesting that enforcement of the ordinance against letter carriers be suspended. When no response to this request was received, the appellants filed suit in federal district court on September 20, 1977, seeking a declaratory judgment that the ordinance was invalid since it conflicted with federal postal regulations which provide that letter carriers may cross lawns while making deliveries if patrons do not object and if there are no particular hazards to the carrier.[2]

The District Court granted the appellees' motion for summary judgment on April 25, 1978. The court interpreted the ordinance to mean "that a mailman, like any other invitee, is licensed to use those paths which the householder provides for access, and that when the mailman cuts across the lawn, rather than using the sidewalk provided, he becomes a trespasser." The court held that the ordinance, as so interpreted, was not invalid because the federal regulation with which it was allegedly in conflict was itself invalid. The court gave two reasons for this conclusion. First, the court concluded that the federal regulation was unauthorized by federal law. Although Congress has authorized the U.S.P.S. to establish "post roads," *see* 39 U.S.C. § 6105, such post roads must be public routes; and since the establishment of public routes is a function of local government, where a municipality, such as the City of St. Louis, declares that public access to private property is to be restricted to public walkways, the Postal Service must abide by that decision. The court also concluded that the federal regulation was invalid because it

**2.** Regional Instruction No. 331–1, City Delivery Service, Section XIII E (1968). Interpretation of this regulation, and a virtually identical provision in the parties' national collective bargaining agreement, has not been without difficulty. In an arbitration award issued on December 23, 1976, the arbitrator upheld an order issued by the Mt. Healthy Station of the Cincinnati, Ohio, Post Office, which *required* letter carriers to cross all lawns if there was no objection by the postal patron and no hazard to the carrier. The union had contended that this directive conflicted with the national regulation which states only that carriers "may" cross lawns if the stated conditions exist, and that there was no justification for giving "may" a mandatory, rather than an elective, construction. The arbitrator held that although "[a] sweeping order to cross all lawns is meaningless because all lawns cannot be crossed, either for practical or legal reasons," the letter carrier was nonetheless obligated to deliver his route utilizing "the most efficient method of travel" —that method of travel being the crossing of lawns if the property owners do not object and if there are no apparent hazards to the carrier.

The lawn-crossing dispute apparently rested there until January 5, 1977, when officials of the St. Louis Post Office issued a directive that carriers were to cross all lawns unless there was a recognized safety hazard or a documented customer objection on file. The union again requested arbitration and, on May 3, 1978, an arbitrator held that the lawn-crossing policy announced by the St. Louis Post Office conflicted with national regulations and that it must be rescinded forthwith. With the advent of this award, the parties appear to be returned to their original position, *i. e.*, that letter carriers may cross lawns while making deliveries if patrons do not object and if there are no particular hazards to the carrier.

was an attempt by the federal government to give letter carriers a franchise to enter upon private property and, thus, was a taking of private property without compensation. The court held that permitting postal patrons to fill out an official complaint card to stop such daily traversing of their property is an inadequate protection of their property rights.

Meanwhile, *City of St. Louis v. Edward Marlotte* was wending its way through the city courts. On January 19, 1979, Marlotte was found to have violated the ordinance and was fined $10.00 by the St. Louis Municipal Court. That court found, in the course of its adjudication of the *Marlotte* case, that the second paragraph of the ordinance, which pertains to delivery personnel, only prohibits the traversing of private property in the absence of the property owner's consent. Since Marlotte crossed the postal patron's lawn after her consent had been withdrawn, he was guilty of trespass as charged. We have been advised that no appeal has been, or will be, taken from this judgment.

■ State courts have the primary responsibility of interpreting state and local laws. *See Wainwright v. Stone*, 414 U.S. 21, 22–23, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Cramp v. Board of Public Instruction*, 368 U.S. 278, 285, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). Since the St. Louis Municipal Court has interpreted the ordinance to permit the traversing of private property by letter carriers with the property owner's consent, we must accept that

construction. *Id.* As so construed, we find no conflict between the ordinance and the national regulation promulgated by the U.S.P.S. Both permit letter carriers to cross lawns or other private property while making deliveries if done with the property owner's consent. The fact that the federal regulation permits lawn-crossing if patrons "do not object," while the ordinance as construed permits lawn-crossing with the property owner's "express or implied consent," is not significant. In either case, letter carriers may cross lawns in the absence of customer objection (withdrawal of implied consent); thus, the effect of the regulation and of the ordinance is identical.[3] We, therefore, reject the appellants' contention that the ordinance is invalid under the supremacy clause.[4]

■ Since the District Court upheld the validity of the ordinance on the ground that the national regulation is invalid, we briefly address that issue. The first reason cited by the District Court for the invalidity of the national regulation, that it was unauthorized by federal law because it conflicted with the City's determination that letter carriers must be restricted to approved walkways, is predicated upon that court's interpretation of the ordinance as containing a flat prohibition on the traversing of private property on other than approved walkways by delivery personnel, regardless of an individual property owner's consent. Since that interpretation of the ordinance is no longer valid, we find no infirmity in the national regulation on this ground.

---

**3.** Permitting a letter carrier to cross lawns in the absence of property owners' objections does *not* address the issue which is of vital importance to both parties, *i. e.*, whether management can *require* carriers to cross lawns in the absence of customer objection or hazard to the carrier. Until recently, this question has largely been dealt with in the collective bargaining process. *See United States Postal Service v. National Association of Letter Carriers*, Grievance No. NC–C–178 (Dec. 23, 1976) (Fasser, Arb.). The U.S.P.S. has recently attempted to expand the occasions on which letter carriers are required to cross lawns by the unilateral issuance of local regulations designed to accomplish that purpose. The union, on the other hand, has responded by sponsoring the enactment of local ordinances which attempt to

restrict the crossing of lawns by letter carriers. By refusing to reach this issue, we leave the parties where they were prior to the filing of this suit: to either the interpretation of existing regulations through arbitration, or to the formulation of a new agreement through collective bargaining.

**4.** We note that if the ordinance is correctly construed by the Postal Service as containing a flat prohibition on the crossing of lawns by letter carriers, regardless of an individual property owner's consent, the ordinance would conflict with the national regulation of the U.S.P.S. and would, thus, be invalid under the supremacy clause.

The District Court also held that the national regulation was invalid because it authorized the taking of private property without compensation. Again, this conclusion by the District Court rested upon an erroneous assumption that, under the national regulation, a property owner could stop the daily traversing of his property on unauthorized walkways by letter carriers only by filling out an official complaint card and filing it with postal authorities.[5] Assuming that such a burden on the assertion of property rights by property owners might run afoul of constitutional guarantees, we need not address that issue here. There is no evidence that St. Louis postal authorities are currently requiring property owners to go through any such procedure to stop the traversing of their lawns by letter carriers. Indeed, any indication of disapproval by an affected property owner would appear to constitute an "objection" by that patron under the national regulation, after which continued lawn-crossing would have to cease.[6]

We, therefore, affirm the judgment of the District Court insofar as it upholds the constitutionality of Section 795.010 of the St. Louis City Municipal Code (as amended). We reverse the judgment of the District Court to the extent that it invalidates Regional Instruction No. 331–1, City Delivery Service, Section XIII E (1968), of the U.S. P.S.

Affirmed in part and reversed in part.

---

**5.** This assumption by the District Court undoubtedly has its genesis in the policy adopted by St. Louis postal authorities in January, 1977, that carriers must cross lawns unless there was a recognized safety hazard or a documented customer objection on file. This policy was held invalid under the second arbitration award issued on May 3, 1978. *See* note 2, *supra.* There is no indication that St. Louis postal authorities have attempted to reinstitute any such policy since this arbitration award. Indeed, the appellants state that the Postal Service "does [not] require the [postal] customer to file a written objection before the letter carrier will stay off the lawn; a brief word to the letter carrier, a small sign, or some other indication of objection will suffice." Brief for the United States and the United States Postal Service, at p. 10.

**6.** Such an indication of disapproval by a property owner would also constitute a withdrawal of the property owner's implied consent which is necessary for lawful lawn-crossing under the St. Louis ordinance.