Charlene **MITCHELL** et al., Plaintiffs,

v.

Joseph L. **DONOVAN** et al., Defendants.

No. 3–68–Civ.–256.

United States District Court
D. Minnesota,
Third Division.

Oct. 2, 1968.

Lynn S. Castner, Minneapolis, Minn., for plaintiffs.

Douglas M. Head, Atty. Gen. of Minnesota, Richard H. Kyle, Sol. Gen. of Minnesota, David J. Byron, Sp. Asst. Atty. Gen. of Minnesota, St. Paul, Minn., for defendants.

Patrick J. Foley, U. S. Atty. for Dist. of Minnesota, Minneapolis, Minn., as amicus curiae.

## MEMORANDUM AND ORDER

Before BLACKMUN, Circuit Judge, DEVITT, Chief District Judge, and NEVILLE, District Judge.

DEVITT, Chief District Judge.

This expression is occasioned by the complaint of the Communist Party candidates for President and Vice-President of the United States and others allied

with them in interest [1] against Joseph L. Donovan who, as the Secretary of State of Minnesota, is the public official charged with the administration of the election machinery of the State, and Douglas M. Head, Attorney General of Minnesota, growing out of the refusal of Secretary of State Donovan to accept for filing the nominating petition for the presidential and vice-presidential candidates of the Communist Party.

The plaintiffs request temporary and permanent relief ordering Secretary of State Donovan to accept the tendered nominating petition (which allegedly contains the names of 2,394 qualified electors of the State of Minnesota), and to place the names of the Communist Party condidates on the 1968 general election ballot. Further relief is requested in the form of a declaration of the inapplicability, or in the alternative the constitutional invalidity, of the Communist Control Act of 1954, 50 U.S.C.A. §§ 841 and 842. This law is the apparent authority for the Secretary of State's refusal to accept the plaintiffs' petition.

At a hearing held September 17, 1968, briefs were filed and arguments heard relating to the jurisdiction of the court over the subject matter of the controversy and the necessity and propriety of convening a statutory three-judge court. While answers to the questions of jurisdiction and the necessity of a statutory three-judge court are not completely clear, the court, acting through a single judge, has made an initial determination that jurisdiction does exist, 28 U.S.C.A. §§ 1331, 1343, and that a statutory three-judge court should be convened to further consider the issues involved. 28 U.S.C.A. §§ 2282, 2284. Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Circuit Judge Harry A. Blackmun of the Court of Appeals for the Eighth Circuit, Chief District Judge Edward J. Devitt, and District Judge Philip Neville, both of the District of Minnesota, the judges designated under authority of 28 U.S.C.A. §§ 2282 and 2284, heard oral arguments on the issues on September 30, 1968, following notice given on September 24, 1968 to counsel for all parties and to the United States Attorney for the District of Minnesota. In accordance with the provisions of 28 U.S.C.A. § 2403, the Attorney General of the United States was notified by the court that the constitutionality of the Communist Control Act of 1954, 50 U.S.C.A. §§ 841 and 842, was drawn in question, and was advised that he would be permitted to intervene for the presentation of evidence, if evidence were otherwise admissible in the case, and for arguments on the question of the constitutionality of the law.

Extensive briefs have been filed on the questions of jurisdiction, the necessity that the matter be determined by a statutory three-judge court, the granting of preliminary relief, and the applicability of, and the constitutionality of, the Communist Control Act of 1954.

It is not unlikely that a decision on the merits of this matter would involve a determination of the constitutionality of the Communist Control Act of 1954, 50 U.S.C.A. §§ 841 and 842. Since the passage of that Act there has been scant judicial or legislative consideration of its meaning and scope. In essence, the law contains a finding that the Communist Party and its adjuncts are a menace to the United States and should be outlawed (§ 841), and expresses a determination that the rights, privileges, and immunities normally attendant upon such bodies are terminated. (§ 842).

The interdiction is broad and general in its terms, and jabs at the very core of our traditional constitutional freedoms. It is thus not a matter to be considered lightly. Its breadth and generality render its applicability to situations like the present a question not admitting of hurried solution. The results

---

1. The other plaintiffs are: The Communist Party of the United States, the Communist Party of Minnesota, ten nominated candidates for the office of presidential elector, two petitioners for such nominations, and an eligible voter of the State of Minnesota.

of a determination of the relevant issues on their merits may well have far-reaching national effect. The constitutionality of the Act is not settled, nor have the issues apparently involved in this case ever received authoritative judicial consideration. The Supreme Court of the United States has interpreted the Act on only one occasion. Communist Party of the U.S.A. v. Catherwood, 367 U.S. 389, 81 S.Ct. 1465, 6 L.Ed.2d 919 (1961). In that case a decision on the constitutional question involved was avoided. But the court did imply a criticism of "the vague terminology" of § 842 of the Act. The court observed that:

> "The statute contains no definition, and neither committee reports nor authoritative spokesmen attempt to give any definition, of the clause 'rights, privileges, and immunities attendant upon legal bodies created under the jurisdiction of the United States or any political subdivision thereof.'" 367 U.S. at 392, 393, 81 S.Ct. at 1468.

The question of validity of the Act, while not passed upon, was noted to contain "novel constitutional questions." 367 U.S. at 393, 81 S.Ct. 1465. These observations might well be taken as a skeptical, if not jaundiced, view of the constitutional validity of the Act.

An examination of the expressions of the United States Supreme Court in other cases involving the control of allegedly subversive organizations, and cases in other areas involving similar constitutional doubts, may well be looked to as a harbinger of the probable view of the court if called upon in an appropriate case to pass upon the constitutionality of the Communist Control Act of 1954.

Because attempted legislative control of subversive groups and activities often involves curtailment of fundamental constitutional freedoms, the Supreme Court has required that the standards of clarity and specificity be applied with particular stringency to such statutes. At least two provisions of the Subversive Activities Control Act of 1950, sections which on their face are narrower and more specific than the statute here involved, have

been stricken down as vague and overbroad. United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964). See also, Note, "Recent Developments in Communist Control Act Prosecutions," 16 W.Res.L.Rev. 206 (1964).

In the case before us, issues involving rights of suffrage, free speech, and free association are involved. Only the most delicate control in such areas is to be tolerated. Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Cramp v. Board of Public Instruction of Orange County, Fla., 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). Legislative exclusions of the sort here being considered may be bills of attainder. United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

The complaint, affidavits, briefs, and the oral arguments presented have raised substantial doubts regarding the Act's applicability and constitutional validity. These doubts are of sufficient proportion to warn that hurried arguments and precipitous decision of the issues would be unwise.

A "Memorandum for the United States as Amicus Curiae," has been filed over the signature of Patrick J. Foley, United States Attorney, advising that in his view the Communist Control Act is inapplicable to this case. He urges that the Act is meant to disable the Communist Party as a party only and not its members, and he suggests that the right of plaintiffs Mitchell and Zagarell to appear on the ballot, and the right of the nominees for presidential electors to be credited with the votes cast for Mitchell and Zagarell, depend in no degree on their status as nominees of the national or local Communist Party. He argues that, as a matter of Minnesota law, Mitchell and Zagarell are entitled to stand for office because their names have been submitted in a timely petition signed by the requisite number of qualified voters, and concludes that no "right, privilege or immunity" of

the Communist Party as such is involved in this lawsuit. It is therefore his view that the Communist Control Act of 1954 does not prohibit the Secretary of State from accepting the nominating petitions and including the nominees upon the ballot as candidates of the Communist Party.[2]

The Government also cites the "familiar rule that the decision of constitutional questions should be avoided where fairly possible," Communist Party of the U.S.A. v. Catherwood, supra, and urges that we should "hesitate long" before adopting an interpretation that requires resolution of "difficult constitutional questions." 367 U.S. at 394, 81 S.Ct. 1465.

The brief of the United States admits the seriousness of many of the plaintiffs' constitutional challenges to the law. Claims that the law is a bill of attainder, that it unjustifiably abridges First Amendment rights and the rights to vote and to run for elective office, and that Congress lacks power to establish qualifications for presidential electors are recognized as being substantial and raising difficult constitutional questions.

▮ Because of the grave doubts which exist as to the constitutionality of the Communist Control Act, and in light of the amicus curiae position of the United States Attorney as to the inapplicability of the Act to the situation here, and his strong suggestions regarding its constitutional infirmities, it would be un-wise for us, on such short notice, to attempt to resolve the issues on their merits. Additionally, it should be noted that the Attorney General of the United States, upon receipt and consideration of the statutory notice sent to him pursuant to 28 U.S.C.A. § 2403, as to the pendency of the constitutional issues, may care to intervene, offer evidence, and make argument as he has a right to do. He should be afforded sufficient opportunity and time to present his views. See also, 28 U.S.C.A. §§ 516 and 517.

But, time is of the essence here. If a decision on the merits were not reached by October 7, 1968, probably the last date when the ballots must be delivered to the printer, the nominated candidates would not have a place on the printed ballot for the November 5, 1968 general election, and the plaintiffs, assuming some merit in their contentions, would be deprived of their individual constitutional rights. The plaintiffs have also sought to show that the lack of an expeditious resolution of the issues involved will substantially impede their proposed electioneering campaign in Minnesota.

On the other hand, the defendants have not urged, nor is there apparent, any grave or irreparable harm which would result from the grant of the requested temporary relief directing the placement of the Communist Party ticket on the ballot pending final disposition of the issues. It has been there several times before with unimpressive voter response.[3]

---

2. At least one court, when presented with a similar problem, has observed that the Act reaches only to the prevention of the specific label, "Communist Party," from appearing on the ballot. Salwen v. Rees, 16 N.J. 216, 108 A.2d 265 (1954).

3. According to the records in the office of the Minnesota Secretary of State, the Communist Party vote for President in Minnesota for the years 1924–1940 is as follows:

|  |  | Voting |
| --- | --- | --- |
| 1924 William Z. Foster—Workers Party | 4,427 | 835,002 |
| 1928 William Z. Foster—Workers Communist | 4,853 | 999,823 |
| 1932 William Z. Foster—Communist | 6,101 | 1,003,009 |
| 1936 Earl Browder—Communist | 2,574 | 1,120,179 |
| 1940 Earl Browder—Communist | 2,711 | 1,257,491 |

Thus, while the court finds and concludes that possible serious injury will accrue to the plaintiffs if the names of Charlene Mitchell and Michael Zagarell as Communist Party candidates for President and Vice-President do not appear on the printed ballot, it has found no discernible probable injury which the defendants or the citizens of Minnesota will suffer if these names are placed on the ballot. A well-informed, intelligent electorate such as exists in the State of Minnesota undoubtedly will be able fairly to discern and make appropriate decision upon the merits of the principles advocated by the Communist Party candidates and their sponsors.

It is therefore ordered

That the defendant, Joseph L. Donovan, as Secretary of State of Minnesota, absent any prohibitive Minnesota law, accept for filing the nominating petition of the plaintiffs and, if upon examination thereof he determines that the petition complies in all respects with the requirements of the pertinent Minnesota statutes, he is directed to cause the names of the plaintiffs, Charlene Mitchell and Michael Zagarell, as Presidential and Vice-Presidential candidates of the Communist Party of the United States, to be placed on the ballot for the November 5, 1968 general election.

This expression is intended to comply with Rule 52 of the Federal Rules of Civil Procedure.

The Clerk is directed to return the nominating petition to plaintiffs' counsel.

NEVILLE, District Judge.

I concur in the action taken by the court since it grants purely temporary relief. Personal disagreement on my part with the philosophy and teachings of Communism obviously does not furnish an answer to the question presented in this lawsuit. Assuming, as I do, the validity and truth of the findings made by Congress and recited in the Communist Control Act of 1954, the court nevertheless is urged by plaintiffs to declare the Act unconstitutional. Congress declared the Communist Party to be "an instrumentality of a conspiracy to overthrow the Government of the United States," whose policies and programs "are secretly prescribed for it by the foreign leaders of the world Communist movement." Its existence was found to be "a clear present and continuing danger to the security of the United States" and the statute concludes "Therefore, the Communist Party should be outlawed." [1] The question of the validity of the Communist Control Act goes to the very bowels of our constitutional framework.

I would prefer to bottom jurisdiction on 42 U.S.C. § 1983 (Civil Rights Act) and 28 U.S.C. § 1343 rather than on 28 U.S.C. § 1331. Although in voting cases, proof of the monetary value of the denial of the right to vote to one or to many people perhaps can or at least might well be presumed to be worth the jurisdictional $10,000 amount, sections 1983 and 1343 require no financial amount to be involved. It seems clear to me that the Secretary of State here acted "under color of [a] statute" of Minnesota. The action of the Secretary of State determining that a statute permitting filing as a political candidate by petition [2] did not apply, for whatever reason, is acting under color of state law. Failure or refusal to apply a law is as much "action under color of law" as is the reverse. Also I agree that a three-judge court is proper.

I take issue with the court's opinion insofar as it expresses *grave* doubts as to the constitutionality of the Communist Control Act. I do not mean to say that it is free from all doubt. Further I believe that the United States Supreme Court, if and when it considers this case, may well conclude that if it permits the Communist Party to be on the ballot little, if anything, will be left of the Communist Control Act. Nevertheless I subscribe to the temporary relief grant-

1. 50 U.S.C. § 841.

2. Minn.Stat. § 202.09.

ed by this court because of the shortness of time, the inability fully to study the problem and all its facets, and the belief that, balancing the equities, less harm results from granting the temporary relief than denying it.

Philosophically in a true democracy the majority should rule and whatever it votes or determines should prevail. Yet inherent in this concept are the seeds of self-destruction. Should the majority vote into power persons who avowedly urge and effect the otherthrow of the present form of government, then no longer is there a democracy or the Republican Form of government guaranteed to the states by the United States Constitution.[3] Under the "clear and present danger" test prescribed by Holmes,[4] Congress found, or at least expressed the fear, that such might happen.

Philosophers and political scientists have pointed to the "paradox of freedom" and have held to the view that the principle of freedom cannot require that one can make the decision not to be free. It is not freedom to be allowed to destroy freedom.[5] It has been said that the best test of truth is the power of thought to get itself accepted in the marketplace.

Many contend, however, that a democratic form of government should protect its freedom from those who disbelieve in its theory and would abandon and deny traditional civil liberties.

The court's opinion herein notes that the Supreme Court has held restrictions on the activities of individual Communists unconstitutional in situations where the statute attempted to prohibit an avowed Communist from working in a defense plant;[6] from holding an office in a labor union;[7] from obtaining a passport;[8] and in another case where benefits were sought to be denied the Communist Party as an employer under state unemployment laws.[9] These cases are, it seems to me, distinguishable, and relate to the movement and civil rights of particular individuals and are quite separate from and not precedent for the question of whether by the ballot we should give our democracy the right by democratic process to vote to destroy itself.

This most difficult question need not be and is not now decided. I feel, however, that while doubts as to constitutionality are not nearly as grave as the court's opinion would indicate,[10] small harm can come from permitting the candidates to be on the ballot for this particular election; whereas if they are ex-

---

3. U.S.Const. art. IV, § 4.

4. Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919).

5. See Auerbach, The Communist Control Act of 1954, 23 U.CHI.L.REV. 173 (1956) containing a discussion at 188 et seq. on the freedom to abdicate liberty. A number of writers holding generally to this view are cited and quoted. See also Comment, The Communist Control Act of 1954, 64 YALE L.J. 712, 738 (1955).

6. United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).

7. United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965).

8. Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964).

9. Communist Party of U. S. A. v. Catherwood, 367 U.S. 389, 81 S.Ct. 1465, 6 L.Ed.2d 919 (1961).

10. Dennis v. United States, 341 U.S. 494, 509, 71 S.Ct. 857, 867, 95 L.Ed. 1137 (1951), wherein the Court said:

"If Government is aware that a group aiming at its overthrow is attempting to indoctrinate its members and to commit them to a course whereby they will strike when leaders feel the circumstances permit, action by the Government is required."

But see Communist Party of United States v. Subversive Activities Control Board, 367 U.S. 1 (1961), dissenting opinion of Justice Black at 137, 81 S.Ct. 1357, at 1431, 6 L.Ed.2d 625:

"I do not believe that it can be too often repeated that the freedoms of speech, press, petition and assembly guaranteed by the First Amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish. * * *"

cluded and the court should be in error in such a decision some persons will have been deprived of their right to be candidates and others of their right to vote for such candidates. Therefore, I concur.