**Designation on Ballot of Candidates of
Communist Party**

CREAMER, Attorney General, July 20, 1972.—

You have asked our opinion on the question of whether you should certify as candidates for President, Vice-President, Congressman, and Presidential electors in the general election to be held on November 7, 1972, persons who describe themselves as representing the "Communist Party or policy" on nomination papers filed with you.[1]

When we received your request originally in March, 1972, we concluded that Federal law[2] superseded State law[3] in the area of control and regulation of Communist and subversive activities, based on Pennsylvania v. Nelson, 350 U.S. 497 (1956). In that case, the Supreme Court of the United States held that the Smith Act of June 28, 1940, c. 439, 54 Stat. 670, 18 USC §2385, superseded the enforceability of the Pennsylvania Sedition Act of June 24, 1939, P. L.

---

[1] The nomination paper is submitted in accordance with Section 951(a) of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, 25 PS §2911(a), which allows, in addition to nominations made by political parties, ". . . nomination of candidates for any public office . . . by nomination paper signed by qualified electors of the State . . . ," on forms prescribed by the Secretary of the Commonwealth. Section 952 of the Code, 25 PS §2912, requires that all such nomination papers shall specify "(a) The name or appellation of the political body which the candidates nominated thereby represent, expressed in not more than three words. . . ." The form of nomination paper prescribed by your office in accordance with the above statutory mandates (Form DSBE-110A-10-M-Rev. 10-63) states:

"We, the undersigned, all of whom are qualified electors of Pennsylvania and of ———— County, representing the ———— Party or Policy, hereby nominate the following persons, viz:"

The papers in question contain the word "Communist" in the second blank space.

[2] Communist Control Act of August 24, 1954, c. 886, 68 Stat. 775, 50 USC §§841-844.

[3] The pertinent portions of the Pennsylvania Election Code are Sections 801(d) and 976, 25 PS §§2831(d), 2936.

872, sec. 207, 18 PS §4207, which proscribed the same conduct. After setting forth the tests for supersession, all of which we found to exist in this case, the Supreme Court concluded, 350 U.S. at 509:

"Since we find that Congress has occupied the field to the exclusion of parallel state legislation, that the dominant interest of the Federal Government precludes state intervention, and that administration of state Acts would conflict with the operation of the federal plan, we are convinced that the decision of the Supreme Court of Pennsylvania in unassailable."

This decision affirmed the similar holding of our own Supreme Court in Commonwealth v. Nelson, 377 Pa. 58 (1954), and was further clarified in the case of Commonwealth v. Dolsen, 183 Pa. Superior Ct. 339 (1957), a companion case to Nelson.

Having determined that Federal law preempts State law in this area, on March 16, 1972, we wrote to the acting Attorney General of the United States requesting his opinion as to whether Federal law prohibits you from accepting and certifying the nomination papers in question. We did this because in our opinion, the Attorney General of the United States is the highest executive authority on the enforcement and interpretation of Federal law.

We have received and analyzed a reply from the United States Department of Justice on behalf of the Attorney General of the United States, dated April 14, 1972, a copy of which is attached. In this letter, the United States Department of Justice points out that Federal law controls, but provides no definitive guidance as to whether or not the Communist Control Act of 1954 would be violated should you certify candidates describing themselves as "Communist Party or policy."

This is in our opinion a Federal matter. As dis-

cussed above, we have requested guidance from the Federal government, and they have not advised us that you should place the names of persons describing themselves as "Communist Party or policy" on the ballot. Therefore, it is our opinion and you are so advised that you may be violating Federal law (in particular the Communist Control Act of 1954) if you place the names of such persons on the ballot.

It is our further advice that you immediately send a letter (with a copy of this letter attached) to all such candidates who filed nomination papers with you notifying them that their names will not appear on the ballot for the general election be held on November 7, 1972.

### Appendix—Letter from U.S. Department of Justice

Honorable J. Shane Creamer
Attorney General
Office of Attorney General
Commonwealth of Pennsylvania
Harrisburg, Pennsylvania 17120

Dear General Creamer:

The acting Attorney General has asked me to respond to your recent letter in which you request this Department's advice as to whether the Secretary of the Commonwealth may accept nominating papers for candidates for President, Vice President, Congressman and Presidential Electors, who avowedly represent "Communist Party or policy." Specifically, your question is whether Federal law, and especially the provisions of the Communist Control Act of 1954,

50 USC §§841-844, prohibit the acceptance of these nomination papers. The Attorney General is, of course, limited by law to furnishing legal advice in formal opinions to the President and the heads of Executive departments and agencies when required in connection with official business. However, the following informal comments will hopefully provide you with some guidance in advising the Secretary of the Commonwealth.

As you note in your letter, in the area of the control and regulation of Communist and subversive activities, Congressional enactments have been held to supersede and preempt State legislation. Cf. Pennsylvania v. Nelson, 350 U.S. 497 (1956); McSurely et al. v. Ratliff et al., 282 F. Supp. 848 (E.D. Ky. 1967), appeal dismissed, 390 U.S. 412 (1968). The provision of Federal law which is most relevant to your inquiry, §3 of the Communist Control Act of 1954, 50 USC §842, provides, in pertinent part:

"The Communist Party of the United States, or any successors of such party . . . whose object or purpose is to overthrow the Government of the United States . . . by force and violence, are not entitled to any of the rights, privileges, and immunities attendant upon legal bodies created under the jurisdiction of the laws of the United States or any political subdivision thereof; and whatever rights, privileges, and immunities which have heretofore been granted to said party . . . by reason of the laws of the United States or any political subdivision thereof, are terminated . . ."

The Supreme Court has only considered the provisions of this statute on one occasion, in Communist Party of U.S.A. et al. v. Catherwood, 367 U.S. 389 (1961). In the course of its decision which held that the statute did not require that the party should no

longer be considered an employer for purposes of taxation under New York's Unemployment Insurance Law, the court noted:

". . . there is no legislative history which in any way serves to give content to the vague terminology of §3 of the Communist Control Act. The statute contains no definition, and neither committee reports nor authoritative spokesmen attempt to give any definition, of the clause 'rights, privileges, and immunities attendant upon legal bodies created under the jurisdiction of the United States or any political subdivision thereof'": 367 U.S. at 392-393.

While the court in Catherwood was not presented with, and consequently did not pass on, the question of the act's constitutionality, it did note that the statute raised "novel constitutional questions, the answers to which are not necessarily controlled by decisions of this Court in connection with other legislation dealing with the Communist Party . . .": 367 U.S. at 393.

Although neither legislative history, nor the Catherwood decision, provide definitive guidance on your inquiry, the question has been dealt with before. In 1968, Communist Party candidates for President and Vice-President of the United States attempted to have their names placed on the general election ballot in Minnesota. Relying on an opinion of the Attorney General of Minnesota that the Communist Control Act precluded the placing of these candidates on the ballot, the Minnesota Secretary of State refused to accept the nominating papers. The candidates and other interested parties then sought an injunction requiring the Secretary to include the candidates' names on the ballot and an order declaring the Act unconstitutional. A three-judge court, after balancing

the harm that would befall plaintiffs from a denial of equitable relief against the harm to the State from issuing the injunction requested, issued a temporary restraining order without reaching the merits of the controversy: Mitchell et al. v. Donovan et al., 290 F.Supp. 642 (D. Minn. 1968).

The court in Mitchell did note, however, that its decision was influenced by the position taken by the United States, appearing as amicus curiae, that "the Act is meant to disable the Communist Party as a party only and not its members": 290 F. Supp. at 644. In other words, this Department's position was that the Communist Control Act is properly interpreted as applying solely to the Party, and not to its members.

You note in your letter that the nominating papers in question were submitted to the Secretary of the Commonwealth pursuant to provisions of Pennsylvania law which permit the nomination of candidates by obtaining the signatures of a specified number of qualified voters. In Mitchell, supra, where the nominations were submitted pursuant to similar statutory provisions in Minnesota, this Department argued that "no 'right, privilege or immunity' of the Communist Party as such is involved in this lawsuit": 290 F. Supp. at 644-645.

I trust that the foregoing will be of some assistance to you. If you have any further questions, please do not hesitate to contact me.

Sincerely,

ROBERT C. MARDIAN
Assistant Attorney General